[Civ. No. 39410. Second Dist., Div. One. Apr. 13, 1973.]

MILES C. BABCOCK et al.,
Plaintiffs, Cross-defendants and Respondents, v.
LEON OMANSKY et al.;
Defendants, Cross-complainants and Appellants.

**COUNSEL**

Joseph W. Fairfield for Defendants, Cross-complainants and Appellants.

Alvin Wechsler and Morris L. Marcus for Plaintiffs, Cross-defendants and Respondents.

**OPINION**

**LILLIE, J.**—Defendants have separately appealed from those portions of an amended judgment whereunder Leon was held liable to plaintiffs on four promissory notes plus interest and ordered to pay attorneys' fees for services rendered in enforcing such obligations. Additional determinations made in the judgment will be discussed hereinafter.

The complaint's first four causes of action sought recovery on the four notes, each in the sum of $5,500, executed by Leon on March 25, 1965; a fifth cause of action related to subsequent transfer by Leon to Bertha (his wife) of certain property without valid consideration and for the purpose of defrauding creditors; other conveyances, allegedly fraudulent, were sought to be set aside in four additional causes of action (sixth through ninth), while a tenth cause of action alleged that Bertha was liable to plaintiffs on Leon's notes as a joint venturer. Upon commencement of the trial, plaintiffs' motion to dismiss the sixth, seventh, eighth, and ninth causes of action was granted. The trial then proceeded on the remaining portions of the complaint as well as on defendants' amended cross-complaint which alleged that Leon's promissory notes were obtained upon plaintiffs' fraudulent representations, and demanded damages therefor and, in a second cause of action, damages and other relief (indemnification) from other cross-defendants.

Defendants having demanded a jury, which was thereafter instructed on the applicable law, special verdicts (in response to pertinent interrogatories) were returned. Such verdicts found that (1) Leon was not induced to enter into a certain loan agreement (resulting in the execution of his four promissory notes) by reason of any fraud on plaintiffs' part and (2) the conveyances alleged in the fifth cause of action were fraudulent as to plaintiffs. The court adopted the foregoing determinations in the amended judgment from which this appeal is prosecuted. Thus, it was therein decreed that plaintiffs have judgment against Leon on each of the notes (first through fourth causes of action) plus designated interest plus attorneys' fees in a designated sum and costs (likewise determined by the

court); the conveyances from Leon to Bertha were fraudulent (fifth cause of action); cross-defendants (plaintiffs) have judgment against both Leon and Bertha on the first cause of action of their cross-complaint; and an order of nonsuit was made against plaintiffs and in Bertha's favor on all other causes of action in which she was a named defendant. The judgment is silent as to any adjudication of the cross-complaint's second cause of action involving B. M. Stewart and others although they participated in the trial; as will be shown, such omission is one of the grounds for reversal urged on this appeal.

Twelve assignments of error are advanced, some of which are repetitious of others; in none of them is it expressly contended that no substantial evidence was presented to support the jury's determinations on the two issues it resolved. Because it involves the present appealability of the amended judgment, we first discuss the claim that such judgment was interlocutory only, since (as indicated immediately hereinabove) all of the issues between all the parties were not therein finally adjudicated. ■ The rule of "one final judgment" is a settled principle of appellate practice, it being consistently held that piecemeal disposition and multiple appeals in a single action would be oppressive and costly. (*Bank of America* v. *Superior Court,* 20 Cal.2d 697, 701-702 [128 P.2d 357].) It is also settled, however, that where parties have distinct interests there can be a separate, final and appealable judgment for each: "[T]o hold the person bound to wait until the final judgment against the other party before taking an appeal from the judgment . . . already rendered is wholly unreasonable. . . ." (*Rocca* v. *Steinmetz,* 189 Cal. 426, 428 [208 P. 964].) (Accord: *Johnson* v. *Hayes Cal Builders, Inc.,* 60 Cal.2d 572, 578 [35 Cal.Rptr. 618, 387 P.2d 394].) ■ The pretrial order in the instant case makes reference to a stipulation between counsel for cross-complainants Omansky and cross-defendants Stewart and others, that the trial of the cross-complaint's second cause of action (concerning a written indemnification agreement of February 2, 1967) "may be stayed pending the outcome of the so-called main action under the indemnity agreement involved therein which is now set for trial on 7/13/70 but will be continued . . . and pending the outcome of a U.S. District Court case involving the same issue." It seems clear that distinct and severable issues (indemnification of the Omanskys by Stewart and others) were involved in such second cause of action; for that reason, and in light of the stipulation just mentioned, "the court could enter its judgment adjudicating all the claims between these two parties without pronouncing judgment on the yet unresolved controversies between [the cross-complainants and the other cross-defendants]." (*Johnson* v. *Hayes Cal Builders, supra,* p. 578.)

For the foregoing reasons, the amended judgment was not prematurely made and entered.

■ On the merits, it is contended by Leon that the judgment as to him is void because the determinations made by the jury (thereafter adopted by the court) were not conclusions of fact but of law, contrary to the provisions of section 624, Code of Civil Procedure.[1] The pertinent interrogatories, two in number, read as follows: "Was Mr. Omansky induced to enter into the loan commitment agreement by reason of any fraud on the part of Mr. Babcock and Mr. Gervis?" (The answer thereto was "No.") "Were the transfers by which Mr. Omansky conveyed his interest to Mrs. Omansky in the Canyon Drive property and Almont Drive property fraudulent as to Mr. Babcock and Mr. Gervis?" (The answer thereto was "Yes.") As to the first of such interrogatories and its answer, it is argued that the jury should have been instructed on *all* of the elements constituting fraud listed in *Vogelsang* v. *Wolpert,* 227 Cal.App.2d 102, 109 [38 Cal.Rptr. 440], and then asked to decide whether each of such elements was present; instead, the interrogatory confined itself to the words "any fraud." Although, as pointed out by Leon, the court in its own motion instructed the jury on all such elements (Inst. No. 2), we do not believe that a cumbersome interrogatory embracing each of the several elements was necessarily required. Said the court in *McCloud* v. *Roy Riegels Chemicals,* 20 Cal.App.3d 928, 936-937 [97 Cal.Rptr. 910], "Parties should have one chance (by request for special verdict forms) to have a jury's fact finding pinpointed." Leon was apparently satisfied with the pinpointing form of this first interrogatory at the trial of the cause—the record is devoid of any showing that he objected thereto; having failed to do so below, any error inherent therein is waived. (*Brokaw* v. *Black-Foxe Military Institute,* 37 Cal.2d 274, 280 [231 P.2d 816]; see also *Bate* v. *Marsteller,* 232 Cal.App.2d 605, 614 [43 Cal.Rptr. 149].) Furthermore, as noted by Witkin, "The questions submitted in special issues must call for *ultimate facts,* not for evidentiary facts or conclusions of law." (4 Witkin, Cal. Procedure (2d ed. 1971) p. 3074.) As applied to the point here under discussion such view is consistent with decisional law commencing with *Hick* v. *Thomas,* 90 Cal. 289 [27 P. 208, 376], that a finding as to fraud may be couched in general terms. (See also *Weger* v. *Rocha,* 138 Cal.App. 109, 111, 113 [32 P.2d 417]; *Bond* v. *DeWitt,* 126 Cal.App.2d 540, 543-544 [272 P.2d 561].)

[1]Section 624 declares in pertinent part: ". . . [A] special verdict is that by which the jury find the facts only, leaving the judgment to the court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the court but to draw from them conclusions of law."

The foregoing discussion is also dispositive of Leon's criticism that the second of the two interrogatories likewise called for a conclusion of law as well as being uncertain and ambiguous in form. In the latter regard he contends that it is impossible to determine whether the conveyance in question was deemed fraudulent by reason of section 3439.04[2] or section 3439.07,[3] Civil Code. If defendants' conduct was fraudulent under either or both of these sections, plaintiffs were still entitled to the relief here granted. Too, "All reasonable inferences will be indulged on appeal to support, rather than defeat, a jury's verdict and the judgment rendered thereon; and in construing a verdict, reference must be had to the pleadings, the evidence and the court's charge." (*Fairfield* v. *Hamilton,* 206 Cal.App.2d 594, 605 [24 Cal.Rptr. 73].) Leon has not called to our attention any evidentiary segments of the reporter's transcript which support his present claim.

It is next contended that the allegations concerning fraud in the fifth cause of action are insufficient. According to both defendants, they are based on information and belief without a statement of the facts upon which such belief is founded; they cite *Woodring* v. *Basso,* 195 Cal.App. 2d 459, 465 [15 Cal.Rptr. 805], which so holds—in accord with established law. ▆ Inasmuch as the transactions were between husband and wife, the matters alleged were within defendants' knowledge and could be set forth on information and belief. (*Schessler* v. *Keck,* 125 Cal.App.2d 827, 835 [271 P.2d 588].) Unlike the situation in *Woodring,* the facts on which the belief is based *are* set forth in the pleading.[4]

Error is assigned by Leon to the admission of evidence bearing on his alleged insolvency due to the transfers of property mentioned above (fn. 4,

[2]"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

[3]"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

[4]"That plaintiffs are informed and believe and thereon allege that said conveyances were made wholly without consideration and without any valid or adequate consideration, and with intent to hinder, delay and defraud the creditors of said defendant LEON OMANSKY, including the plaintiffs herein, and that said defendant BERTHA OMANSKY accepted and received said conveyance with knowledge of said fraudulent intent on the part of said defendant LEON OMANSKY and with intent on her part to assist said defendant LEON OMANSKY in and for said fraudulent purposes, and to hold said real properties as a secret trust for the use and benefit of said defendant LEON OMANSKY." (Par. IV.) "That plaintiffs are informed and believe and thereon allege that said defendant LEON OMANSKY was rendered insolvent by the said conveyance of his said property and that said defendant is now insolvent." (Par. V.)

*supra*). "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." (Civ. Code, § 3439.02, subd. (a).) ■ To bring the defendant within the coverage of such statute, Leon was asked about his various liabilities at or about the time of such transfers (May 1965); they included sums owed to parties named Levinstein and Silver, totalling $35,000, a lawsuit by Union Bank on a note for $18,200 and another lawsuit (filed in October of 1965) by one Clejan for $87,850. It seems to be contended by Leon that since certain of these lawsuits or claims were subsequently proved unfounded, the court should not have entertained proof of their existence. Even if such were the fact, although the record is devoid of such showing, the question for consideration on plaintiffs' case in chief was whether or not Leon rendered himself *probably* insolvent at or about the time the transfers were made; if so, the conveyance was fraudulent (fn. 2, *supra*), regardless of any subsequent financial recoupments. The court did not err in admitting the above evidence.

Complaint is made of six instructions given by the court, and the refusal of six instructions offered by defendants although less than four pages of defendants' brief are devoted to this assignment of error. ■ As to the asserted error relative to defendants' instructions, the argument in each instance is either extremely brief or supported by no authority; accordingly, such circumstances properly require adherence to the rule that an appellate court will not review such unsupported claims of error. (*Houser* v. *Floyd,* 220 Cal.App.2d 778, 787 [34 Cal.Rptr. 96, 94 A.L.R.2d 1423].) The same rule must be applied to the criticism of certain instructions given by the court—it consists of the mere assertion that they were improper as to form or content. ■ There is some substance, however, to the criticism of a portion of instruction No. 2 (given on the court's own motion) to the effect that Leon had the burden of proving fraud (inducing the execution of his notes) by "clear and convincing evidence." In *Sierra Nat. Bank* v. *Brown,* 18 Cal.App.3d 98 [95 Cal.Rptr. 742], there is dictum to the effect that the burden of proof in a fraud case is no more than a preponderance of the evidence; although such dictum seems sound in light of the supporting discussion (accompanied by several citations), there is no showing that the instruction was prejudicial (*Wilkinson* v. *Southern Pacific Co.,* 224 Cal.App.2d 478, 484 [36 Cal.Rptr. 689])— significantly, too, the instant claim of error was not even asserted on the motion for new trial. With respect to plaintiffs' M, based on section 3439.07 (fn. 3, *supra*), defendants argue that while it is a correct statement of the law, it did not "belong in this case" absent any evidence that "creditors" were involved. It is enough to note Leon's admission that he

owed money to various named persons at the time in question—the claim of error is wholly untenable. The same determination must be made of the challenge to other instructions offered by plaintiffs and given by the court—they were either correct statements of the law or, so far as shown, worked no prejudice to defendant's cause.

The foregoing discussion having disposed of all points raised by Leon and Bertha jointly (albeit by implication) or by Leon separately, we proceed to that portion of the amended judgment challenged by Bertha only. By her separate appeal she contends that the court erred in failing to award her attorneys' fees pursuant to the provisions of section 1717, Civil Code;[5] for reasons stated hereinafter, such contention must be sustained. As the language of the statute expressly indicates, a party need not be a signatory to the contract in order to recover attorney's fees as the prevailing party—as such prevailing party he becomes entitled to fees "whether he is the party specified in the contract *or not.*" Accordingly, while Bertha was not alleged to be liable on Leon's notes (first through fourth causes of action), in plaintiffs' tenth cause of action it was alleged that she was a co-adventurer and partner with Leon and other defendants therein named with regard to the transactions set forth in those four causes of action; it was further alleged that each of the named defendants (including Bertha) was also the agent and employee of the others with respect thereto. Accordingly, paragraph IX reads as follows: "That by reason of said agency and conduct of said defendant LEON OMANSKY and said joint venture and partnership of the defendants as aforesaid, defendants, and each of them, became indebted on said promissory notes and are now indebted to plaintiffs . . . on the various causes of action set forth in said Complaint. . . ." It seems clear, by virtue of the above, that plaintiffs were thus seeking recovery on the notes; having won an order of nonsuit as to this tenth cause of action, Bertha was the "prevailing party" and entitled to attorney's fees under section 1717. Such conclusion is unaffected by plaintiffs' claim that she did not prevail on the fifth cause of action; that cause of action (to set aside a fraudulent conveyance) was

---

[5]Section 1717: "In any action on a contract, where such contract specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

"Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void.

"As used in this section 'prevailing party' means the party in whose favor final judgment is rendered."

not ex contractu but ex delicto. ▮ The court also erred in holding that the above statute, enacted in 1967 (after the notes were executed), was not retrospective. In *System Inv. Corp.* v. *Union Bank,* 21 Cal.App.3d 137, 164 [98 Cal.Rptr. 735], this court ruled to the contrary. (See also *Coast Bank* v. *Holmes,* 19 Cal.App.3d 581, 596-597 [97 Cal.Rptr. 30]; *Arnold* v. *Browne,* 27 Cal.App.3d 386, 399 [103 Cal.Rptr. 775].)

Finally, with respect to the first four causes of action plaintiffs properly assert that they are entitled to reasonable attorneys' fees for services rendered on this appeal. ▮ A contract which provides for such fees in conjunction with its enforcement embraces an allowance for legal services on appeal. (*Wilson* v. *Wilson,* 54 Cal.2d 264, 272 [5 Cal.Rptr. 317, 352 P.2d 725].) ▮ We can determine and fix such fees, as plaintiffs suggest (*Coronet Credit Corp.* v. *West Thrift Co.,* 244 Cal.App.2d 631, 649 [53 Cal.Rptr. 433]), or we can direct the trial court to do so upon remand of the cause (*Cal. Viking Sprinkler Co.* v. *Cheney,* 182 Cal.App.2d 564, 572 [6 Cal.Rptr. 197]); since the matter must be remanded for the fixing of fees for Bertha's counsel, we choose the latter course.

As to defendant Leon Omansky, those portions of the amended judgment from which he has appealed are affirmed. As to defendant Bertha Omansky, that portion of the judgment from which she has appealed is reversed with directions to the trial court to take testimony (if appropriate) and determine a reasonable fee for trial services rendered by her counsel. Neither party will recover costs on appeal. The trial court is also directed to determine a reasonable attorney's fee for services rendered on defendant Leon Omansky's appeal and to add such fee to the principal amount of the judgment against said defendant.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied May 9, 1973.